UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELISSA PROVENCHER,

                              Plaintiff,

v.                                                          6:15-CV-1287
                                                            (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON        STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.              PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Melissa Provencher

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 9, 11.)  For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff obtained a certificate of general educational development (GED), and has past work as a housekeeper and a child care provider.  (T. 173, 177-78.) [1]  Generally, Plaintiff's alleged disability consists of intervertebral disc disorder, lumbago, and sciatica with pain in both legs.  (T. 176.)

### B.    Procedural History

On September 12, 2012, Plaintiff applied for a period of Disability and Disability Insurance Benefits, alleging disability beginning July 7, 2011.  (T. 16.)  Plaintiff's application was initially denied on December 26, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  On May 20, 2014, Plaintiff appeared in a video hearing before the ALJ, Angela Miranda.  (T. 26-54.)  On June 27, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 10-25.)  On September 3, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)    Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 18-24.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since July 7, 2011, the alleged onset date.  (T. 18.)  Second, the ALJ

---

[1]    Page citations refer to the page numbers used on CM/ECF rather than the page numbers contained in the parties' respective motion papers.

found that Plaintiff has the following severe impairments: lumbar spine dysfunction including protrusions and bulges at multiple levels with mild foraminal stenosis and described as generalized spondylitis with mild degenerative changes.  (T. 18-19.)  The ALJ found that Plaintiff's allergic rhinitis and obesity are not severe impairments under the regulations.  (*Id.*)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings").  (T. 19.)  The ALJ considered Listing 1.04 (disorders of the spine).  (*Id.*)

Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) with postural limitations.  More specifically, the claimant has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds.  The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying.  The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday.  The claimant requires the ability to change position while at work and this can be met at normal breaks or meal periods and without leaving the work position.  Given the claimant's limitations in mobility, the claimant has the capacity to occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps.  The claimant has no limitations in manipulative abilities and no limitations in the ability to balance.  Despite the claimant's subjective complaints of pain, mentally the claimant has the capacity to understand, remember, and carry out multi-step tasks, consistent with the demands of a normal workday.  The claimant has the capacity to appropriately interact with supervisors, coworkers, and the general public.  The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

(T. 19-22.)  Fifth, the ALJ found that Plaintiff is able to perform past relevant work as a cashier and a housekeeper.  (T. 22-23.)  Sixth, in the alternative, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T. 23-24.)

**D.      The Parties' Briefings on Their Cross-Motions**

Plaintiff argues that the ALJ committed reversible error by improperly evaluating the opinion of treating physician Vivienne Taylor, M.D.  (Dkt. No. 9, at 4-9 [Pl.'s Mem. of Law].) Construed liberally, Plaintiff appears to argue that the ALJ improperly substituted her own lay opinion in assessing Dr. Taylor's opinion and Plaintiff's RFC because the ALJ failed to cite an alternative medical opinion to support her findings.  (*Id.,* at 5, 9.)

Defendant argues that the ALJ properly assessed Dr. Taylor's opinion and Plaintiff's RFC.  (Dkt. No. 11, at 5-19 [Def.'s Mem. of Law].)

## II.      RELEVANT LEGAL STANDARD

**A.      Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowyen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix

> 1 of the regulations. If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering
> vocational factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has
> the residual functional capacity to perform his past work. Finally, if
> the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform. Under the cases previously discussed, the claimant bears
> the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the ALJ Properly Assessed the Opinion of Treating Physician Dr. Taylor in Determining Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 9, at 4-9 [Pl.'s Mem. of Law].)

To those reasons, the Court adds the following analysis.

Residual functional capacity ("RFC") is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A "regular and continuing
> basis" means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2

[July 2, 1996]). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical

and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider opinions from acceptable medical sources, and may consider opinions from other sources, to show how a claimant's impairments may affect his or her ability to work.[2] 20 C.F.R. § 404.1513(a)(1)-(5) (identifying the five types of acceptable medical sources as: (1) licensed physicians, (2) licensed or certified psychologists, (3) licensed optometrists, (4) licensed podiatrists, and (5) qualified speech-language pathologists).

Under the "treating physician's rule," controlling weight is afforded to an opinion from a plaintiff's treating physician when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015), *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Greek,* 801 F.3d at 375; *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the frequency, length, nature and extent of the physician's treatment, (2) the amount of medical evidence supporting the opinion, (3) the

---

[2]     Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. 20 C.F.R. § 404.1527(c); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (listing regulatory factors).

Here, the record includes opinions of Plaintiff's work-related physical abilities and limitations from the following two acceptable medical sources: (1) consultative examining neurologist Kautilya Puri, M.D., and (2) treating primary care physician Vivienne Taylor, M.D. (T. 272-74, 370-72.)

### i.    Consultative Examining Neurologist Dr. Puri

On November 7, 2012, Dr. Puri examined Plaintiff and diagnosed her with low back pain with radiculopathy. (T. 272-74.) Dr. Puri noted that an MRI study of Plaintiff's spine showed disc bulges and degenerative joint disease. (T. 272.) Upon examination, Dr. Puri observed that Plaintiff could stand on her heels and toes, but Plaintiff stated that she could not walk on her heels and toes. (T. 273.) Dr. Puri observed that Plaintiff had a decreased squat, but she was able to rise from a chair without difficulty. (*Id.*) Dr. Puri observed that Plaintiff's lumbar spine had a general decreased range of motion of five to ten degrees to all modalities with mild local tenderness. (*Id.*) Dr. Puri further observed that Plaintiff's straight leg raising test was mildly positive on the left. (*Id.*) In sum, Dr. Puri opined that Plaintiff had "mild" limitations in bending, stooping, and kneeling; and Plaintiff should not lift "heavy" weights. (T. 274.) Dr. Puri opined that Plaintiff exhibited no objective limitations in communication, fine motor activity, gross motor activity, or gait. (*Id.*)

### ii.    Treating Primary Care Physician Dr. Taylor

On April 28, 2014, Dr. Taylor provided an opinion of Plaintiff's work-related physical abilities and limitations due to her intervertebral degenerative disc disease of the lumbar spine.

(T. 370-72.)  Dr. Taylor opined that Plaintiff could sit and stand/walk for six minutes at a time and for less than two hours in an eight-hour workday, could  "rarely" lift less than ten pounds, and could  "never" lift ten pounds or more during an eight-hour workday.[3]  (T. 370-71.)  Dr. Taylor opined that Plaintiff would need a job that permits shifting positions at will from sitting, standing, or walking; and Plaintiff would need to take unscheduled breaks every 15 minutes during an eight-hour workday.  (*Id.*)  Finally, Dr. Taylor opined that Plaintiff could "rarely" look down, twist, and climb stairs; and could "never" crouch/squat or climb ladders.  (T. 372.)  Dr. Taylor's opinion indicated that Plaintiff's symptoms and limitations have existed since January 2, 1996. (*Id.*)

The ALJ afforded "limited weight" to Dr. Taylor's opinion, stating that the opinion was "at odds" with objective evidence and examination notes in the record.  (T. 21.)   However, the ALJ failed to cite, and the record does not contain, a medical opinion to dispute Dr. Taylor's opinion of Plaintiff's lifting and carrying restrictions, and to establish that Plaintiff could perform all of the exertional demands of the ALJ's RFC (namely, lifting and carrying 20 pounds occasionally, and 10 pounds frequently).  (*Id.*)  Accordingly, it appears that the ALJ improperly substituted her own lay opinion for competent medical opinion evidence.

It is well settled that the ALJ is not permitted to substitute his or her own expertise or view of the medical proof for any competent medical opinion.  *Greek*, 802 F.3d at 375; *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (stating that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion"); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose

---

[3]        Dr. Taylor's assessment form stated that "'rarely' means 1% to 5% of an 8-hour working day; [and] 'occasionally' means 6% to 33% of an 8-hour working day."  (T. 370.)

between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him."). Therefore, the Court need not address whether Dr. Taylor's opinions bound the ALJ under the regulations due to the ALJ's aforementioned omission. *Balsamo*, 142 F.3d at 81 (finding that the Court need not address whether the physicians' opinions bound the ALJ under the regulations because the ALJ did not cite *any* medical opinion to dispute the physicians' conclusions as to the plaintiff's work-related limitations).

Moreover, even if the ALJ properly assessed Dr. Taylor's opinion, the ALJ's RFC determination that Plaintiff could perform a range of light work is not supported by substantial evidence based on the current record. *See id.*, at 81-82 (finding that the ALJ's RFC determination was not supported by substantial evidence in the absence of a medical opinion indicating that the plaintiff could perform the work activities in the RFC determination); *House v. Astrue*, 11-CV-0915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was necessary where there was no medical opinion supporting the ALJ's RFC determination).

As discussed above, the ALJ determined that Plaintiff had the RFC to perform a range of light work, which requires lifting and carrying up to 20 pounds occasionally (up to one-third of an eight-hour workday), and lifting and carrying up to ten pounds frequently (up to two-thirds of an eight-hour workday). (T. 19-22); 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251 (1983). However, Dr. Taylor opined that Plaintiff could "rarely" lift less than ten pounds and "never" lift ten pounds or more; and Dr. Puri opined that Plaintiff should not lift "heavy" weights. (T. 274, 370-71.) Notably, Dr. Puri's opinion neither defined the term "heavy" nor specified an amount of weight that Plaintiff *could* lift and carry in an eight-hour workday. (T. 274.) The ALJ indicated that Dr. Puri's opined limitations were "somewhat vague," noting that Dr. Puri did not define the

term "mild," and the meaning of the term was not evident from the examination report. (T. 19.) However, the ALJ did not recontact Dr. Puri to resolve any ambiguities in the opinion, or to obtain a more specific opinion of Plaintiff's work-related physical abilities and limitations.

The Court recognizes that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *see also Hart v. Comm'r,* 07-CV-1270 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010). However, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b(c)(1)-(4); *Rosa*, 168 F.3d at 80; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

The Second Circuit has found that a consultative examiner's use of the terms "moderate" and "mild," without additional information, was so vague as to render the opinion useless in evaluating whether the plaintiff could perform the exertional requirements of sedentary work. *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) (superceded by statute on other grounds). The use of terms like "mild" and "moderate" has been found to pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Anderson v. Colvin,* 12-CV-1008, 2010 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013) *(citing Waldau v. Astrue,* 11-CV-0925, 2010 WL 6681262, at 4 ([N.D.N.Y. Dec. 21, 2003]). However, that is not the case in the present matter because the ALJ determined that Plaintiff's had severe lumbar spine dysfunction including protrusions and bulges at multiple levels with mild foraminal stenosis (described as generalized spondylitis with mild degenerative changes). (T. 18-19.) Accordingly, based on the current record, Dr. Puri's opinion is too vague to establish whether Plaintiff can perform the physical requirements of the ALJ's RFC, including lifting and carrying up to 20 pounds occasionally and up to ten pounds frequently. (T. 19-22.)

For these reasons, remand is necessary for the ALJ to reassess the opinion of treating physician Dr. Taylor. As appropriate, the ALJ may recontact Dr. Taylor and/or Dr. Puri to request clarification or additional information regarding their opinions. *See* 20 C.F.R. § 404.1520b(c)(1) (providing that an ALJ may recontact a medical source for clarification or to obtain additional information). This may include recontacting Dr. Puri to obtain a more specific opinion of Plaintiff's physical abilities and limitations, including the amount of weight that Plaintiff can lift and carry, and how frequently Plaintiff can lift and carry objects, during an eight-hour workday. Remand is also required for the ALJ to reevaluate Plaintiff's RFC based on a proper evaluation of the physical opinions and in light of any new information obtained.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:   January 5, 2017
             Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

12